IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAHEEM LA'MONZE PLATER, | ) |
| Plaintiff, | ) |
| v. | ) No. CIV-22-779-R |
| EDEN POIROT, et al., | ) |
| Defendants. | ) |

## ORDER

Plaintiff Raheem La'Monze Plater, a state prisoner appearing *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Eden Poirot, Lawton Correctional Facility ("LCF") Captain, and GEO Group, Inc. ("GEO") asserting violations of his constitutional rights, fraud, and a claim under the Religious Land Use and Institutionalized Persons Act.[1] (*See* Doc. No. 1). The matter was referred to United States Magistrate Judge Gary Purcell for review pursuant to 28 U.S.C. § 636(b)(1)(B). Defendants Poirot and GEO subsequently moved to dismiss, or, in the alternative, for summary judgment, for three reasons: (1) Plaintiff was precluded from bringing these claims under the doctrine of *res judicata*; (2) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); and (3) Plaintiff failed to allege facts sufficient to state a claim for relief under the Fifth, Eighth, or Fourteenth Amendments. *See* Fed. R. Civ. P.

---

[1] Because Mr. Plater is a *pro se* litigant, the Court affords his materials a liberal construction, but it does not act as his advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

12(b)(6); (Doc. No. 26). On February 8, 2023, Judge Purcell issued a Second Supplemental Report and Recommendation (Doc. No. 30) recommending that Defendants' Motion to Dismiss be converted to a Motion for Summary Judgment and granted as to Plaintiff's federal claims for failure to exhaust administrative remedies.[2] Judge Purcell recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law fraud claim. Because Plaintiff has objected to the Second Supplemental Report and Recommendation (Doc. No. 31), the Court is obligated to undertake *de novo* review. Having done so, the Court finds as follows.

Plaintiff's Complaint arises from incidents occurring at the LCF in Lawton, Oklahoma. Specifically, Plater alleges that Defendant Poirot, acting as a "pit bull in a skirt," placed him on property restriction from April 21, 2021, through May 8, 2021, because he refused housing and a cellmate out of concerns for his safety. (Doc. No. 1, at 7, 12). He claims he was deprived of soap, toothpaste, a toothbrush, toilet paper, shirts, pants, towels, blankets, a mattress, pens, legal materials, and his Quran. (Doc. Nos. 1, at 6-7, 15, 17-18; 1-3; 1-5; 1-6). Due to these restrictions, Plater alleges that he was unable to clean himself, keep warm, or sleep. (Doc. No. 1, at 15). He asserts that he was made to wipe his behind with his only article of clothing and then wash the material without soap "stark naked." (*Id.* at 16). Because the bedding had been removed, Plater was allegedly forced to sleep naked on a rusty "cold metal bed frame" causing him to develop an eye infection.

---

[2] Judge Purcell noted that "Plaintiff was advised of his responsibilities under Fed. R. Civ. P. 12 and 56 in responding to Defendants' Motion [to Dismiss/Motion for Summary Judgment]." (Doc. No. 30, at 3); (*see* Doc. No. 27).

(*Id.* at 15-16). Plater claims that these deprivations constituted cruel and unusual punishment under the Eighth Amendment and violated his Fourteenth Amendment right to due process. (*Id.* at 6-8). Moreover, he claims that the confiscation of his Quran violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the seizure of his legal materials violated his First Amendment rights by hindering his request for post-conviction relief in his state criminal case. (*Id.*).

Mr. Plater brought an action against Defendants Poirot and GEO, among others, in 2021 asserting that his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process and equal protection had been violated for the same seventeen-day period of property restriction described herein. *See Plater v. Poirot, et al.*, No. CIV-21-899-R (W.D. Okla. filed Sep. 13, 2021), Doc. Nos. 1, 1-1. The Court dismissed the previous case for lack of jurisdiction because Plater failed to exhaust his administrative remedies. *See Plater v. Poirot*, No. CIV-21-899-R, 2022 WL 1782603, at *3 (W.D. Okla. June 1, 2022) ("*Plater I*"). Plater alleges in the instant case that two of his grievances—Grievances 369-21 and 370-21—were properly exhausted on June 14, 2022, two weeks *after* his case was dismissed.³ (Doc. No. 29, at 5). In light of that exhaustion, Plater contends that the Court has jurisdiction over the case. (*Id.*).

---

³ To demonstrate that Grievances 369-21 and 370-21 were exhausted, Plater references exhibits submitted as part of his previous case, *Plater v. Poirot, et al.*, No. CIV-21-899-R, Doc. Nos. 30-4, 30-5. Those exhibits are ARA responses to Plater's appeals from Mark Knutson, Director's Designee. Both responses assert grievance appeals were filed improperly because they were "[r]eceived out of time from [the] date of the reviewing authority's response." (Doc. Nos. 30-4, at 1; 30-5, at 1).

3

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When asserting that a fact is genuinely disputed, a party must support that assertion by either "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits, . . . admissions, interrogatory answers, or other materials," or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The movant bears the initial burden of demonstrating that no genuine issue of material fact exists. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712-13 (10th Cir. 2014).

Defendants assert that Plater's claims are barred by the doctrine of *res judicata,* which precludes parties from relitigating adjudicated claims. Application of the doctrine of *res judicata* requires, among other elements, that "the prior suit . . . ended with a judgment on the merits." *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). An involuntary dismissal "operates as an adjudication on the merits" unless the dismissal order in the prior suit states otherwise, or when the dismissal was based on "lack of jurisdiction, improper venue, or failure to join a party under Rule 19." Fed. R. Civ. P. 41(b). Here, because the previous suit was dismissed for a lack of jurisdiction for failure to exhaust administrative remedies, the prior suit did not end with a judgment on the merits.

*See Plater I* at *1 ("[T]he Court . . . DISMISSES Plaintiff's Complaint . . . for lack of jurisdiction."). Thus, dismissal under the doctrine of *res judicata* would be inappropriate.

Defendants alternatively assert that Plaintiff failed to exhaust his administrative remedies as required by the PLRA. Under the PLRA, prisoners must exhaust prison grievance procedures before filing suit. *Jones v. Bock*, 549 U.S. 199, 202 (2007). The Oklahoma Department of Corrections ("ODOC") has a four-step grievance process for administrative exhaustion of prisoner claims. *See* Oklahoma Department of Corrections "Inmate/Offender Grievance Process," OP-090124.[4] (Doc. No. 25-13).

First, when an issue arises, an inmate must communicate with prison staff to attempt to informally resolve the issue. (*Id.* at 6-8, § IV(B)). Second, if the issue is not resolved informally, the inmate must submit an "Inmate/Offender Grievance Process Request to Staff" within seven days of the incident raising only one issue therein. (*Id.* at 7, § IV(C)). Third, if the matter remains unresolved, the prisoner may file a formal Grievance Report Form with the reviewing authority within 15 days of the receipt of the response to the "Request to Staff"; the reviewing authority at a privately contracted facility is the on-site facility administrator. (*Id.* at 8-9, § V, (A)(1), (6)). Finally, a prisoner may appeal the reviewing authority's response to the formal Grievance to the Administrative Review Authority ("ARA") within 15 days of receipt of the reviewing authority's decision or any

---

[4] A new version of Operations Memoranda OP-090124 became effective on January 20, 2022. *See* "Inmate/Offender Grievance Process," ODOC (last visited June 27, 2023) https://oklahoma.gov/content/dam/ok/en/doc/documents/policy/section-09/op090124.pdf. However, Plaintiff has not asserted that it is applicable to the facts in this case. The Court presumes that the version included in the Special Report (Doc. No. 25-13), effective October 18, 2017, was in effect at the time of the incidents giving rise to this suit.

amended decisions. (*Id.* at 12, § VII(B)). The ruling of the ARA is final, and the inmate will have exhausted the internal administrative remedies required by Okla. Stat. tit. 57, § 564. (*Id.* at 14-15§ VII(D)).

In Plater's prior case, the Court concluded that Plater failed to exhaust each grievance he filed. *See Plater I* at *3. Plater now asserts that two of his grievances have since been exhausted: Grievances 369-21, and 370-21. (Doc. No. 29, at 5). Accordingly, the Court limits its exhaustion analysis to those specific grievances and concludes, consistent with its Order in *Plater I*, that Plater failed to exhaust his administrative remedies as to his other related grievances.[5] *Id.*

## I.    Grievances

On April 27, 2021, Plater submitted Requests to Staff to Defendant Poirot (Doc. No. 25-6, at 3-4) and Sergeant Funk (Doc. No. 25-7, at 3-4). In his Request to Poirot, Plaintiff alleged that she violated the Eighth Amendment by depriving him of his personal property and subjecting him to conditions that were cruel and unusual. (Doc. No. 25-6, at 4). He also asserted that Poirot violated his First Amendment rights by restricting his freedom to practice religion and right to grieve. (*Id.*). Plaintiff requested that his religious and legal materials be returned, and that he be provided soap to wash his hands and feet. (*Id.* at 3).

In his Request to Sergeant Funk, Plater alleged that Funk violated his Constitutional rights by depriving him of clothes, towels, blankets, religious and legal materials, and

---

[5] The facts regarding the other grievances—Grievances 306-21, 323-21ER, and 324-21—are detailed by Judge Purcell in his Supplemental Report and Recommendation (Doc. No. 30, 9-16).

serving him food that was "not . . . cooked per orders." (Doc. No. 25-7, at 3-4). Plater requested that everything that was taken from him be returned. (*Id.* at 3). Poirot responded to both requests on April 30, 2021, stating that Plater's property had been returned (Doc. No. 25-6, at 3) and that his "property restriction was enacted in accordance with policy and signed off on by the appropriate committee members" (Doc. Nos. 25-7, at 3).

### a. Grievances 329-21, 369-21

Plater submitted Grievance 329-21 to the reviewing authority on May 6, 2021, wherein he alleged that Defendant Poirot placed him on "unconstitutional property restriction" and ordered his clothes confiscated and his religious and legal materials seized. (Doc. No. 25-6, at 2). These deprivations prevented Plater from following the proper grievance procedures, in part, because he did not have a pen to fill out grievance forms. (*Id.*). He requested that the reviewing authority take action by placing a "notification of violations LCF-040201-(v)(A)(14)(a) and (v)(A)(7)" letter in Poirot's file and notifying the contract monitor. (*Id.*). Plater's grievance was returned unanswered by the Grievance Coordinator on May 24, 2021, because: (1) Plater did not sign the grievance form; and (2) the grievance form was not sent to the Facility Administrator or Correctional Health Services Administrator. (*Id.* at 1). He was given "one opportunity to resubmit [his] corrected grievance within ten calendar days of receipt of this notice." (*Id.*).

Two days later, Plater submitted Grievance 369-21 wherein he attempted to cure the deficiencies of the prior grievance by repeating the same facts, claims, and requests, while signing the document and addressing it to the "Warden/Facility Head." (Doc. No. 25-10). The Grievance Coordinator returned the grievance unanswered again stating that: (1)

Plater's request for disciplinary action against staff could not be addressed in the grievance process; (2) the relief sought in the "Request to Staff" and "Grievance form" did not match; (3) Plater failed to follow previous instructions for filing this grievance; and (4) the grievance form was not sent to the Facility Administrator or Correctional Health Services Administrator. (*Id.* at 1). On June 14, 2022, more than a year later, Plater's appeal of the response to Grievance 369-21 was rejected by the ARA because it was "[r]eceived out of time from [the] date of the reviewing authority's response."[6] *Plater v. Poirot, et al.*, No. CIV-21-899-R, Doc. No. 30-5.

### b. Grievances 330-21, 370-21

Mr. Plater submitted Grievance 330-21 to the reviewing authority on May 6, 2021 (Doc. No. 25-7, at 2). Grievance 330-21 accused Sergeant Funk of participating in Plater's property restriction and was based on the same factual allegations presented in Grievances 329-21 and 369-21. Plater requested that violations of LCF-04204(v)(A)(7), (14)(a) be reported to the contract monitor as well as placed in Sergeant Funk's personnel file. (*Id.*). The grievance was returned unanswered on May 18, 2021, because: (1) Plater had not signed the grievance form; (2) the grievance was unanswerable as there were no time frames specified for the alleged action(s) to have occurred; and (3) the grievance form was not sent to the Facility Administrator or Correctional Health Services Administrator. (*Id.*

---

[6] Plater does not state when he appealed the response to Grievance 369-21, and the Court is unable to discern the date based on the materials provided. It appears, however, that the appeal was filed sometime after his case was dismissed on June 1, 2022. *See Plater I*.

8

at 1). Plater was given "one opportunity to resubmit [his] corrected grievance within ten calendar days of receipt of this notice." (*Id.*).

Two days later, Plater submitted Grievance 370-21 wherein he tried to cure the deficiencies of the prior grievance by repeating the same facts and requests. (Doc. No. 25-9, at 2). Again, he requested that violations of LCF-04204(v)(A)(7), (14)(a) be reported to the contract monitor and placed in Sergeant Funk's personnel file. (*Id.*). The grievance was returned unanswered because: (1) requests for disciplinary actions against staff will not be addressed in the grievance process; (2) the relief sought in the "request to staff" and "grievance form" did not match; (3) Plater had failed to follow previous instructions for filing this grievance; and (4) the grievance form was not sent to the Facility Administrator or Correctional Health Services Administrator. (*Id.* at 1). On June 14, 2022, more than a year later, Plater's appeal of the response to Grievance 370-21 was rejected by the ARA because it was "[r]eceived out of time from [the] date of the reviewing authority's response."[7] *Plater v. Poirot, et al.*, No. CIV-21-899-R, Doc. No. 30-4.

## II.    Exhaustion of Administrative Remedies

The PLRA mandates that prisoners exhaust all available remedies, "not just those that meet federal standards," before bringing "any suit challenging prison conditions." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); 42 U.S.C. § 1997e(a); *see also Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005) ("[A] prisoner may not sue under RLUIPA

---

[7] Plater does not state when he appealed the response to Grievance 370-21, and the Court is unable to discern the date based on the materials provided. It appears, however, that the appeal was filed sometime after his case was dismissed on June 1, 2022. *See Plater I.*

9

without first exhausting all available administrative remedies."). "A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016). Administrative remedies are deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

Failure to exhaust is an affirmative defense, thus, defendants "bear the [initial] burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). Once that burden is met, "the onus falls on the plaintiff to show that remedies were unavailable to him." *Id.* The plaintiff must show that he properly complied with grievance procedures—"substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

The record indicates that Plater filed seven grievances—Grievances 306-21, 323-21ER, 324-21, 329-21, 330-21, 369-21, and 370-21—regarding the same seventeen-day period of property restriction from April 21, 2021, through May 8, 2021. Accordingly, to bring this action, plaintiff is required to show that remedies were unavailable to him, and that he properly complied with grievance procedures. In his Objection to the Report and Recommendation, Plater asserts that he was unable to timely file his appeal with the ARA because he was interfered with by prison officials. (Doc. No. 31, at 1). Specifically, Plater asserts that an individual named Ashley Katzinger "obtained and discarded the mail to the ARA" thereby thwarting his attempts to file timely appeals. (*Id.* at 3). The issue of Ms.

Katzinger's alleged obstruction was raised and considered by the Court in Plater's previous case. *See PlaterI* at *3. There, like here, Plater failed to identify which of his many grievances he appealed, what causes of action those grievances concerned, and the dates he attempted to lodge the ARA appeals. *Id.* Without this information, the Court concludes—as it did before—that it cannot determine which of Plater's claims Ms. Katzinger allegedly interfered with, much less whether, but for the alleged interference, Plater would have exhausted these claims with the ARA.[8] *Id.*

Moreover, a prisoner cannot satisfy the PLRA's exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84; *see also Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 703-04 (10th Cir. 2008) (affirming dismissal of the plaintiff's claims for failure to exhaust administrative remedies under PLRA where the plaintiff failed to file administrative complaint before deadline). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Failure to exhaust administrative remedies is fatal to federal judicial review of a prisoner's claims. *Id.* at 90-92.

According to ODOC procedures, Plater had fifteen days to appeal the response to his grievance upon receipt of the reviewing authority's decision. (Doc. No. 25-13, at 12,

---

[8] Although Plater asserts that the Court found in *Plater I* that Grievances 369-21 and 370-21 were "properly submitted" (Doc. No. 31, at 6), the Court made no such finding. Rather, the Court determined that Plater failed to exhaust his grievances. *See Plater I*, at *3.

§ VII(B)). Although Plater appealed the responses to Grievances 369-21 and 370-21, he appears to have done so more than a year after receiving the reviewing authority's decision and after the Court granted summary judgment in favor of Defendants in his prior lawsuit. *See Plater I.* While the Inmate/Offender Grievance Process allowed prisoners to make a request to the ARA to submit a grievance or appeal out of time by submitting a specified form, such a request "must be received within 15 days of the date of denial of the untimely grievance or appeal by the ARA." (Doc. No. 25-13, at 19, § XII(A), (B)). Nothing in the record suggests that Plater made such a request within fifteen days of the date of denial of the untimely appeal by the ARA. Proper exhaustion requires compliance with ODOC deadlines, and Plater failed to meet those deadlines.[9] In his Supplemental Report and Recommendation, Judge Purcell determined that Plaintiff failed to exhaust his administrative remedies by filing untimely appeals. (Doc. No. 30, at 17). The Court agrees. Plater began, but did not complete, the grievance process and is therefore barred from pursuing his § 1983 claims.

### III. State Fraud Claim

In addition to his federal claims, Plater alleges that Defendants have perpetrated actual and constructive fraud in violation of Oklahoma law. (Doc. No. 1, at 22-23). When a district court dismisses all federal claims, "the court may, and usually should decline to

---

[9] The fact that grievances and grievance appeals were returned to Plaintiff unanswered does not excuse Plaintiff from the requirement that he exhaust administrative remedies. The ODOC Grievance Process expressly recognizes that prison officials may return grievances unanswered. (Doc. No. 25-13, at 10, § VI(A)(1)); *see Thomas v. Parker*, 609 F.3d 1114, 1119, n.2 (10th Cir. 2010) ("[D]efendants did not make the exhaustion process unavailable to [Plaintiff] by returning his documents unanswered.").

exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law fraud claim pursuant to 28 U.S.C. § 1367(c)(3).

## Conclusion

The Second Supplemental Report and Recommendation (Doc. No. 30) is ADOPTED IN ITS ENTIRETY and Defendants' Motion for Summary Judgment (Doc. No. 26) is GRANTED. The Court declines to exercise jurisdiction over Plaintiff's state law fraud claim.

Plaintiff's Motion for Permanent Injunctive Relief (Doc. No. 28) and "Objection to Defendant's Motion to Dismiss/Cross-Motion for Summary Judgment" (Doc. No. 29) are, therefore, DENIED. Additionally, Plaintiff's Motion for Summary Judgment (Doc. No. 32) is DENIED, and his "Motion for Leave to Supplement Motion for Summary Judgment" (Doc. No. 37) is DENIED as moot. Judgment shall be entered accordingly.

**IT IS SO ORDERED** this 5th day of July 2023.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE