IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAHEEM LA'MONZE PLATER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-22-779-R |
| | ) |
| EDEN POIROT, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Raheem La'Monze Plater, a state prisoner appearing *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Eden Poirot, Lawton Correctional Facility ("LCF") Captain, and GEO Group, Inc. ("GEO") asserting violations of his constitutional rights, fraud, and a claim under the Religious Land Use and Institutionalized Persons Act.[1] (*See* Doc. No. 1). On July 5, 2023, the Court adopted the Second Supplemental Report and Recommendation issued by United States Magistrate Judge Gary Purcell and granted summary judgment in favor of Defendants. (Doc. No. 38). Before the Court is Plaintiff's Motion for Reconsideration (Doc. No. 40), Defendants' Response (Doc. No. 41), and Plaintiff's Reply (Doc. No. 42). Upon consideration of the filings, the Court DENIES Plaintiff's Motion for the following reasons.

---

[1] Because Mr. Plater is a *pro se* litigant, the Court affords his materials a liberal construction, but it does not act as his advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

On September 13, 2021, Plaintiff brought an action against Defendants Poirot, GEO, and others, alleging that he was subjected to a seventeen-day period of property restriction in violation of his Eighth and Fourteenth Amendment rights. *See Plater v. Poirot, et al.*, No. CIV-21-899-R (W.D. Okla. filed Sep. 13, 2021), Doc. Nos. 1, 1-1. The Court dismissed the case because Plater failed to exhaust his administrative remedies. *See Plater v. Poirot*, No. CIV-21-899-R, 2022 WL 1782603, at *3 (W.D. Okla. June 1, 2022). Plater subsequently filed this case alleging that two of his grievances, Grievances 369-21 and 370-21, were properly exhausted on June 14, 2022—two weeks *after* his previous case was dismissed.[2] (Doc. Nos. 29, at 5; 31, at 1). Accordingly, Plater contended that all available remedies had been exhausted. (Doc. No. 40, at 2). Concluding that his grievance appeals were untimely, the Court granted summary judgment in this case for failure to exhaust administrative remedies. (Doc. No. 38, at 12). Now, Plater moves for reconsideration. (Doc. No. 40). Because Plater's Motion to Reconsider was filed seven days after entry of judgment, the Court construes the Motion as a Fed. R. Civ. P. 59(e) motion. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("[A] motion to reconsider filed within ten days after entry of judgment is considered a Fed. R. Civ. P. 59(e) motion.").

A motion to reconsider is warranted when there is: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, or (3) a need to correct clear

---

[2] To demonstrate that Grievances 369-21 and 370-21 were exhausted, Plater references exhibits submitted as part of his previous case, *Plater v. Poirot, et al.*, No. CIV-21-899-R, Doc. Nos. 30-4, 30-5. Those exhibits are ARA responses to Plater's appeals from Mark Knutson, Director's Designee. Both responses assert that the grievance appeals were filed improperly because they were "[r]eceived out of time from [the] date of the reviewing authority's response." (Doc. Nos. 30-4, at 1; 30-5, at 1).

error or prevent manifest injustice. *Id.* "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* "[O]nce the district court enters judgment, the public gains a strong interest in protecting the finality" of that judgment. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). Thus, "[a] motion for reconsideration under Rule 59(e) is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." C*hrist Ctr. of Divine Phil., Inc. v. Elam*, 763 F. App'x 740, 743 (10th Cir. 2019) (internal quotation marks omitted). A court has discretion when deciding to grant or deny a motion to reconsider. *Hancock v. Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

The Prison Litigation Reform Act ("PLRA") mandates that prisoners exhaust prison grievance procedures before filing an action under § 1983. *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Because failure to exhaust is an affirmative defense, a defendant "bear[s] the burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). Once that burden is met, "the onus falls on the plaintiff to show that remedies were unavailable to him." *Id.* The plaintiff must show that he properly complied with grievance procedures—"substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, a prisoner cannot satisfy the PLRA's exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84.

3

The Oklahoma Department of Corrections ("ODOC") has a four-step grievance process for administrative exhaustion of prisoner claims. *See* ODOC "Inmate/Offender Grievance Process," OP-090124.[3] (Doc. No. 25-13). First, when an issue arises, an inmate is required to communicate with prison staff to attempt to resolve the issue informally. (*Id.* at 6-8, § IV(B)). Second, if the issue is not resolved informally, the inmate must submit an "Inmate/Offender Grievance Process Request to Staff" within seven days of the incident raising only one issue therein. (*Id.* at 7, § IV(C)). Third, if the matter remains unresolved, the prisoner may file a formal Grievance Report Form with the reviewing authority within 15 days of the receipt of the response to the "Request to Staff."[4] (*Id.* at 8-9, § V(A)(1)). Fourth, a prisoner may appeal the reviewing authority's response to the formal Grievance to the Administrative Review Authority ("ARA") within 15 days of receipt of the reviewing authority's decision or any amended decisions. (*Id.* at 12, § VII(B)). The ARA's ruling is final, and the inmate will have exhausted the internal administrative remedies required by Okla. Stat. tit. 57, § 564. (*Id.* at 14-15, § VII(D)).

Here, the ARA did not receive Plater's appeals of Grievances 369-21 and 370-21 until approximately one year after Plater received the reviewing authority's responses on

---

[3] A new version of Operations Memoranda OP-090124 became effective on January 20, 2022. *See* "Inmate/Offender Grievance Process," ODOC (last visited June 27, 2023) https://oklahoma.gov/content/dam/ok/en/doc/documents/policy/section-09/op090124.pdf. However, Plaintiff has not asserted that it is applicable to the facts in this case. The Court presumes that the version included in the Special Report (Doc. No. 25-13), effective October 18, 2017, was in effect at the time of the incidents giving rise to this suit.

[4] The reviewing authority at a privately contracted facility is the on-site facility administrator. (Doc. No. 25-13, at 9, § V(A)(6)).

June 2, 2021 (Doc. Nos. 25-9, at 1; 25-10, at 1). *See Plater v. Poirot, et al.*, No. CIV-21-899-R, Doc. Nos. 30-4; 30-5. Thus, there is no dispute as to whether Plater timely exhausted the ODOC's four-step grievance process; the question is whether an administrative remedy was unavailable.[5] Plater bears the burden of showing that an administrative remedy was unavailable to him. *See Tuckel*, 660 F.3d at 1254. In his Motion for Reconsideration, Plater insists that the Court misapprehended the facts or his position in its Order granting summary judgment, and that he should be excused from complying with the PLRA because administrative remedies were not available to him. (Doc. No. 40, at 7).

The Supreme Court of the United States has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). An administrative procedure is unavailable when: (1) "despite what regulation or guidance materials may promise, it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use" so that "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (parenthesis omitted). Plater claims that each of these circumstances apply to his case. (Doc. No. 40, at 2, 7).

---

[5] Plater acknowledges that he "admitted" in his prior case, *Plater v. Poirot, et al.*, No. CIV-21-899-R (W.D. Okla. filed Sep. 13, 2021), that he "had **ONE** available remedy to exhaust – ARA. So, I did. Then refiled." (Doc. No. 40, at 2) (emphasis in original).

First, the administrative procedure did not operate as a "dead end." While Plater was ultimately denied relief, there is no evidence that administrators lacked the authority to provide relief or refused to ever exercise that authority. *See Ross*, 578 U.S. at 643. Plater's requests were returned unanswered for failure to comply with ODOC grievance process instructions. He has not alleged or shown that aggrieved inmates were consistently unable to obtain relief via the grievance process or that officers were unable to provide relief.

Second, the Court finds that an ordinary prisoner could discern and navigate the grievance process. If not for a prison staff member's refusal to mail his timely appeals to the ARA, Plater claims he would have properly exhausted his remedies. (Doc. No. 40, at 3, 5-7). Thus, by his own admission, Plater was able to navigate the grievance process. Plater points to nothing in the ODOC policy that persuades this Court that the grievance process meets the "significantly higher bar" of being "essentially unknowable—so that no ordinary prisoner can make sense of what it demands." *Ross*, 578 U.S. at 644.

Third, as to whether prison administrators thwarted Plater from completing the grievance process through machination, misrepresentation, or intimidation, Plater must make two showings:

(1) that the threat, machination, or intimidation actually did deter the plaintiff inmate from pursuing a particular part of the prison administrative process; and

(2) that the threat, machination, or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from pursuing the part of the prison administrative process that the inmate failed to exhaust.

*See May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019) (quoting *Tuckel*, 660 F.3d at 1254) (internal brackets omitted). It is clear from the record that Plater was not dissuaded

from filing numerous grievances and requests to staff—prison authorities warned him he may be subjected to grievance restrictions based on the number of filings. (Doc. No. 25-11). In his Motion, Plater explains that he properly appealed the reviewing authority's responses to Grievances 369-21 and 370-21 to the ARA within the fifteen-day window to appeal by handing his appeal letters to Ashley Katzinger, a staff member at the prison, to mail on his behalf.[6] Plater claims that he was deterred from appealing, however, because Katzinger declined to mail the letters to the ARA. Plater provides no evidence to support his allegation beyond the allegation itself. (Doc. No. 40, at 3, 5-7).

The ODOC's "Inmate/Offender Grievance Process" provides that when an inmate submits a Grievance Appeal to the ARA, he is "to maintain a copy of the appeal and related grievance paperwork for [his] record," and "[t]he original paperwork will be retained by the reviewing authority." (Doc. No. 25-13, at 12, § VII(B)(1)(a)). Plaintiff has not provided the Court a copy of his timely filed appeal, nor has he alleged that the reviewing authority has a copy. Additionally, "[t]he ARA has 30 days from receipt of the appeal to respond. If more time is required, the inmate/offender will receive written notification, and the due date will be extended no more than an additional 30 days." (*Id.* at 14, § VII(B)(3)). Accordingly, Plater should have been on notice that his appeal had not been received by the ARA when he did not receive a final ruling or written notification by August 2021. Plaintiff has not alleged that he ever attempted to inquire about the status of his appeal with the ARA, or that he corresponded with the ARA whatsoever until he submitted an appeal

---

[6] The fifteen-day window to appeal the reviewing authority's decision spanned from June 2, 2021, the day he received the reviewing authority's decision, to June 17, 2021.

of Grievances 369-21 and 370-21 approximately one year after he received the reviewing authority's decisions (Doc. Nos. 25-9; 25-10) and after the Court granted summary judgment in favor of Defendants in his prior lawsuit. *See Plater v. Poirot, et al.*, No. CIV-21-899-R, Doc. No. 28.

In conclusion, Plater has not demonstrated a need to correct clear error or prevent manifest injustice. The Court rejects his argument that it misapprehended the facts or his position warranting reconsideration of the Court's July 5, 2023, Order. Accordingly, Plaintiff's Motion for Reconsideration (Doc. No. 40) is DENIED.

**IT IS SO ORDERED** this 31st day of August 2023.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE